Good morning, the interviewee is before you. My name is Herwin Shiverance. Can I represent you in power when you retire? I'd like to insert three minutes for a vote. I'll appoint your revenue and tax cuts section. One would be 9-8-1. It's a procedure where a non-resident can challenge residency without having to pay the tax. Yes, sir. We have a correction. Now, didn't he raise all of the challenges he wishes to raise in the end? Didn't the other option of paying first and then seeking a refund? Well, most of the challenges would occur, the results would occur during the one-night-three-month procedure. No, but I guess he said it this way. My question wasn't so precise. I mean, the basic fight is whether or not during the relevant period he was a California resident and required to pay California income tax. The challenge that he sought to address could have been fully addressed either by paying first and then asking for a refund or saying, I don't want to pay now, let's remove the vacation. Dono is separating the challenges with regard to residency from the constitutional reasons. Now, I'm talking only about residency. Yes, he could have challenged residency one-night-day in Tuesday by filing an income tax in the month of April. And that was the only thing that he should have had the option to do, is that right? That's correct, Jeremy. The delay is really extraordinary in this case. It's been going for 23 years. Would you say that delay is related to the fate of the Fairtrade Tax Court? Yes, Jeremy. First, I think by virtue of conclusion, you must commit conclusion, it's the jury and the data, and the data is secured for itself. The delay was the result of the actions of the Fairtrade Tax Court. For example, he filed a protest in the Fairtrade Tax Court in 1996. In 2007, nothing was done to hear that protest. Also, the allegations of complaint was meticulously true in the detail of the ways in which the Fairtrade Tax Court and the State Board of Equalization are responsible. Yes, and I jumped to the point of it. And so, what did he and the taxpayer say were right in saying, What about my application? In other words, was there a request for the indispensation? Your Honor, yes. This is a matter that really is much more like Cothbert Dicketts in terms of all that's going on. And I think the key question for this court, and for the first impression, is whether this federal jurisdiction through the constitutional claims that arose in the context of the 1931 procedure, and the defendants say that if it's a tax-injunction act, there's no jurisdiction. Because 19382 would try to plain-speak an official value. There's three reasons why that's not true. I'll state them and then explain. First, it's uncertain whether he can litigate the constitutional claims arising in 19381 proceeding and 19382B1 proceeding. Second, heavy duty. Well, is that issue, I believe, if it's unclear whether or not he can bring those claims, doesn't that raise a rightness concern that he would have to first attempt to raise those claims before they become right? No, Your Honor. The United States Supreme Court, in cases like California v. Graysburg and Church, in this court, in Ashton v. Murray, said that the tax-injunction act does not create a bar. It's uncertain whether it's a remedy. He does not have to exhaust. So long as I persuade you that it's uncertain whether he could raise those claims in 19382 proceeding, the tax-injunction act does not preclude. When you say those claims, which claims are you referring to when you say those claims? I'm speaking of the constitutional claims that arose in the context of the 19381 procedure to process people protection claims. And what's the nature of those to process people protection claims? He argues that the loss of evidence that has occurred during the pendency of 19381 proceeding makes them possible to process. And he has a class 1 equal protection claim for how he was treated. And so that's why he's a pleasure to assess. So those claims all really arise out of the nature of the proceeding that he was pursuing? Exactly. What I was saying to Judge Rollins is it's uncertain whether you can litigate your constitutional claims arising in 19381 proceeding in 19382 v. Fletchers. I thought the front end of the tax court said that you could. No. And could we be barred from reading one of those claims if you gave an impunctuous... No, no, Your Honor. If you look at 19382, it says that you bring a challenge to the tax as computed and assessed. It seems to imply what can be brought as a challenge to the tax as computed and assessed. You mentioned one in 1991 and 1992. There's no case that has ever said you're completing the constitutional other claims arising in 19382. And then the constitutional claims, could you explain to me if there is really a difference between 19381 and 19382 in terms of being expeditious? Well, Your Honor, yes, there is. And I was going to give the pre-argument answer. My third argument was there's no reason to believe, in light of his experience of 19381, that 19382 would be plain-speaking and efficient, that in light of what's happened here, there's absolutely no reason to believe that if you look at 19382 and 19382, like in 19381, the claim has to start with the Fairfax Tax Court. And, oh, in 19382 and 19385, you go to court after six months, the California courts have said, and specifically this is the Barnes case, that you have to exhaust your administrative remedies before you can be heard in court. In light of what's happened to Mr. Hyatt in the 381 proceeding, hard to believe that 382 would be any more expeditious. The best analogy I can think of there is, there was once a restaurant, they had a bowl of chili, and it was a big piece of glass. And I told the waiter, he said, I'll give you another bowl of chili. That's what the state is essentially doing, saying, go do the same thing, go back to the Fairfax Tax Court. But I want to go back to the first argument that I started with, because it follows this question, why it be uncertain here. If you look at every case cited by the defendants, they all involve constitutional challenges. The tax that was initially computed and assessed, there's not one case where the defendants cite were constitutional claims, that arose later with this, has ever been obligated, and that's what makes it uncertain. Well, but it strikes me as though this is almost bootstrapping, meaning you're saying that it's not plain speaking inefficient because it's not plain speaking inefficient. No, Your Honor. The complaint is, well, it's due process, because it's taken too long, and there's equal protection because I've been treated badly in the process. No, Your Honor, this is why I think it's important to keep separate the three key arguments. I think the first thing is just unclear whether the constitutional claims that he has can even be brought into the proceeding. Even my point is these constitutional claims are arising out of the slowness of the very proceeding in which he is involved, and they don't arise until he's in this proceeding, so it strikes me that's really the same question as to whether or not he's got a plain speaking inefficient. The question is, what can he do now? What the defendants say is file a 382, pay the $55 million plus, and now start all over again with a 382, and I'm saying we don't even know if it's constitutional claims to be raised. Counsel, does Capital Industries answer that question as to whether or not constitutional challenges may be raised in a challenge to a tax assessment in advance to answer that question? No, Your Honor, what Capital Industries involves was capital records that was owned by a British company, EMI, and at 70% interest, and the question was how the tax could be assessed on capital records given its foreign ownership. There's language that constitutional claims raise, but those were only constitutional claims with regard to the assessment and computation of the initial tax, not anything that happened where they embedded the indication that constitutional challenges generally may be raised in that context, but doesn't that render your uncertainty argument a little bit more nebulous? No, Your Honor, because that was exactly what I was saying to Judge Fletcher, a situation where there was a challenge to computation of tax, not constitutional claims that arose later. There's never been a case where the set of constitutional claims that arose later can be heard in a 382 proceeding. I'd like to ask one other question, of course. Is it your position that the finding of the jury in the data is binding on these defendants? Yes, Your Honor. Well, the United States Supreme Court refers to the first terms of the damages, and the damages that can be assessed in the data against California are limited to those that can be assessed against the data, but it doesn't change the jury findings. The second item, the three of you, let me ask you a real follow-up. What is it about these two proceedings, 382 and 381, that causes you to say you cannot present a constitutional challenge in the 19th 382? 382, they seem to be the same thing. They're separate. You have to pay first, and then the other thing, you can go to a source, and you have to proceed to see my medical degree. The language is 381. 382 says you can make a charge in tax that's assessed and computed, and the question is, is that just challenging the tax, which is computed in 19th 382, or is it what happened later than that, which is as you say, the very first? Well, the question is, what can you challenge? And if you think about it, if it was a refund proceeding, you pay the tax that's computed and assessed, and then you sue for a refund. It doesn't seem to open the door to what this above-the-label challenge is. But if you think about challenges to the tax that you have actually paid, it's just that you have to pay it first, and then there's a preventive testing. It depends on what you mean by computed and assessed. One way of reading it, which all the courts have done, is the same as your policy. You should challenge human tax as it's computed and assessed in 19th 382. The defendants want to say that you can bring the challenge to ask anything that occurred later, such as the 3D motor skis. There's no authority for that. I do want to mention the third argument, and that's having used the procedures created by the state and used them in good faith. It's not a plain, speedy, and efficient remedy to now say, okay, start a new proceeding under 382. In fact, the United States Supreme Court in Roswell said, it's not plain, speedy, and efficient, it's a multiplicity of proceedings. And that's exactly what's being talked here. I think they would direct this court to its own language, the Retirement Fund versus Franchise Transport, at point 909 and 2nd, and 1273-74. It says, to be efficient, a remedy must impose no undue hardship or unnecessary expense to climate and energy. You mentioned that there was a delay of about seven or eight years, which I find very humorous. 11 years. 11 years. 11 years. But it was the delay because it just simply refused to decide or whether other proceedings would be any better. Because the jury found, because they had a Supreme Court ruling, they simply sat on the protest for 11 years. And now, they say, go back to Franchise Transport. That's not plain, speedy, and efficient. Let me ask you this. Are you seeking and disproceeding anything other than setting aside the alleged tax-deficiency risk and damages for equal protection? No, Your Honor, this is a super-duper triviality. So the only issue is still how many, how much taxes are owed? Well, ultimately, that's the question. But we believe here, the real issue in this case is the constitutional violations. So I understand that, but my question is, what's the scope of the remedy that you're seeking? It's limited to whether or not taxes are owed. The scope of the remedy would be to finally end tax deficits. The argument is, because my equal protection rights have been violated, I don't owe tax. That's the argument. Well, it's also because there's due process violations. There's also all of the other state-based proceedings. And I think I'll say it this time, but I'll disengage. I have one more question. Okay, sure, anything. But we'll make sure that you get this is true, by no means. Thank you. You can proceed with what you need to say. Okay, thank you. And is he out of line with what it is that has been lost, and who's lost it? Well, in terms of the evidence that was left, Your Honor, if you look at the complaint, if you look at the exact paragraphs you're supposed to look at with regard to the complaint, one by one it details the specific evidence that has been lost. If you look at the exact sites to the complaint, in paragraph by paragraph, you list each piece of evidence that's been lost. As a result, it would be completed in paragraph 85 to 91. Can you restate a little bit about farming? Sure. He was, for example, there were records from Pioneer, Phillips, in terms of the amount of money that he was paid that's now been lost. There's a promissory note with regard to his California house that's now been lost. There was these information, as well as... So who lost it? Well, in some instances... If the case has been lost, Your Honor, I would think that he would be totally able to preserve that piece of paper. It's not a dead person. No. Isn't it because, as the plaintiff reported out, the franchise tax court changed computer systems in 1999, and there was no tax back-up, and a lot of the documents were lost as a result of that. Can you find that in the data screen of your decision? It's 335, P30, 151. When you're talking about the loss of documents, just tax court changing computer systems. But the underlying question, I'm wondering whether he was a resident or not, is a pretty simple question. I actually think that most of the evidence is documentary, and most of the evidence would be in his possession. Your Honor, what he says is that there are over 100 witnesses who are no longer available. It says that in these paragraphs, 85 to 91, one by one, he documents which specific surrealism he wants. Your Honor, this is a simple proceeding. It would have taken, how, over 21 years? Counselor, he hasn't run for it. First, what is the role of comedy in our analysis of this case? Well, first, Your Honor, the Supreme Court, their assessment, real estate versus intermediary says, the analysis for comedy, quote, is a plain, speedy, and efficient remedy. It's exactly the same such as tax injunction. So, in this context, comedy is a change in it. Second, this Court, no, wait a minute. Yes, sir. So, there is no separate concern that he should consider regarding the interests of the state in administering its own tax laws? You think that's encompassed in the tax injunction and analysis? Yes. The fair assessment, real estate versus intermediary says, whether there is a plain, speedy, and efficient remedy for comedy purposes is the same as whether there is a plain, speedy, and efficient remedy for purposes of tax injunction. And second, this Court, no, wait a minute, versus Killian said, that comedy doesn't preclude the consideration of constitutional claims. Your Honor, don't worry about the court taking overtime. We're just taking our time. Thank you. I didn't know you had any chance to respond. I appreciate it. Thank you. If we could, well, I'll just posit it as part of the question. Let's assume that any issue with respect to due process and equal protection could be raised in a proceeding if you pay first and litigate afterwards. As we try to decide whether or not this is plain, speedy, and efficient within the meaning of the Tax Injunction Act, do we compare plain, speedy, and efficient with respect to what has happened? Or do we compare plain, speedy, and efficient comparing the federal suit that you're now seeking to bring to the precededness available to you now in California court? If that's the comparison as to which is plain, speedy, and efficient, or do we say, well, this other one proved not to be plain, speedy, and efficient, and therefore you had to come to federal court even if the federal court proceeding might be just as prolonged as the proceeding if you were to go to court  so to speak, system out the first pledge you gave later? Your Honor, I understand that question. I think you can look backwards to the point that I made given what he has experienced in the 381 proceeding with the Federal Tax Tax Accord. To say, we'll start all over again with the   Accord. I think that's the answer to my question. What I'm asking you  and I'll try to answer this simply, when I'm trying to decide plain, speedy, and efficient now, with the case that's the current posture, do I compare the speed of the Federal Proceeding that's anticipated that you want to the State Proceeding that you could now have by paying and then litigating? Is that the comparison in terms of plain, speedy, and efficient? Yes. If the only assessment is likely to happen in the State Proceeding now, with reference to what's already incurred, given that the Franchise Tax Court in this  is 21 years, there's no reason to believe, say, someone alone with the Franchise Tax Court in 1882 would be a plain, speedy, and efficient remedy. Thank you. Just on the other side, we will give you a chance to respond. Thank you, Chief of the Court. I'm Seth Watts, and I'm here  the Franchise Tax Court. Michael Lowenfeld is representing the State Court of Mutualization. CURRENT  Thank you, Chief of the Court. Very, very amazing testimony. This matter was before the State Court of Art. Something like eight or nine years, this case was there, and there was absolutely no action taken into it. I can't judge Fuentes, ma'am, but I just say that we have emotionally divided the argument. They say that man plans and God laughs at your thoughts in this proceeding, but we have not been the ones spoken to a federal judge that is usually in the country to have a joke or an insult. I don't think it's either here. It's probably an answer to the question of what has happened, and I fully understand that on this motion, consistent with all the well-plated facts, you have to be taken as true. What the record reflects in this case, and these are simply the doggings of the two
judges: Fuentes, W. Fletcher, Rawlinson